**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 3:10CR76 (JBA)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **HON. JANET B. ARTERTON** |
| **FRANCIS B. DELMASTRO** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**UNITED STATES MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through undersigned counsel, hereby respectfully

submits its sentencing memorandum in response to defendant Francis Delmastro's sentencing

memorandum filed December 7, 2010, and in preparation for the sentencing hearing scheduled

for December 13, 2010.  As set forth below, we respectfully advise the Court that, given the need

for deterrence and the seriousness of the offense, and pursuant to all the factors outlined in 18

U.S.C. § 3553(a), imposing a sentence within the Sentencing Guideline range of 12 to 18 months

would be appropriate, and would be sufficient but not greater than necessary to comply with the

purposes of sentencing outlined in section 3553(a)(2).

**OFFENSE CONDUCT**

This case involves unreported income in 2003 and 2004 for two bars in Connecticut:

Civic Pub in Storrs and Bar With No Name in Hartford.  Defendants Francis Delmastro and John

Pinone co-owned the Civic Pub through a partnership called PinDel, LLC.  Francis Delmastro

operated the Bar With No Name as a sole proprietorship without Pinone's involvement.

Both bars, as with many restaurants and bars, received a substantial portion of their gross receipts in the form of cash.  The evidence uncovered during the investigation showed that Francis Delmastro and John Pinone, partners in the Civic Pub, failed to report on tax returns filed with the IRS cash receipts earned by the Civic Pub in 2003 and 2004.  The defendants had Civic Pub managers keep a "double set of books" which tracked all gross sales and receipts.  However, those records, at the direction of the defendants, were not turned over to the Civic Pub's accountant, leading to a substantial understatement of the Civic Pub's true gross sales for 2003 and 2004 and, ultimately, the falsification of Pinone's and DelMastro's personal tax returns as a result of their failure to report their share of the net profit from Civic Pub.

Additionally, the evidence further shows that Delmastro, during the same time period, owned another successful bar in Hartford called The Bar With No Name.  The manager at this bar has provided statements that Delmastro skimmed cash receipts from this bar as well – which, ultimately, led Delmastro to falsify his personal tax returns by failing to report these additional receipts.  According to his former spouse, defendant Delmastro hid cash from the Bar With No Name and Civic Pub at his home in coffee cans, cereal boxes, pasta boxes, and in the freezer.

The Indictment in this case charged Delmastro with one count of conspiring with his co-defendant John Pinone to defraud the United States by skimming cash from the Civic Pub and failing to report the pub's true gross receipts on tax returns with the IRS, and his true net income on his personal tax returns.  In addition, the Indictment charged Delmastro with two counts of filing false tax returns in violation of 26 U.S.C. § 7206(1) with respect to his personal tax returns for 2003 and 2004 based on his underreporting of income from both the Civic Pub (co-owned with Pinone) and The Bar with No Name (owned by himself).

Pursuant to an agreement filed with the Court, defendant Delmastro pleaded guilty to Count IV of the Indictment charging him with filing a false personal tax return for 2003, in violation of 26 U.S.C. 7206(1).  Delmastro's same course of conduct taking place in years outside the count of conviction (including 2004) constitutes relevant conduct for purposes of sentencing.

## DISCUSSION

### I.    SENTENCING FACTORS, 18 U.S.C. 3553(a)

#### A.    Overview

The Supreme Court has declared:  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007).  The Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant(s); (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant(s); (4) the need to provide the defendant(s) with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  See  18 U.S.C. § 3553(a).

### B.    Consideration Of Section 3553(a) Factors

#### (1)    Advisory Guidelines

The base offense level pursuant to U.S.S.G. §  2T1.1 is 16 because defendant Delmastro, in failing to report all his cash receipts from his two bar restaurants, caused a readily provable tax loss of between $80,000 and $200,000.[1]  See U.S.S.G. § 2T1.4 (F).  This calculation, stipulated to by the defendant as part of the plea agreement, is based not only upon the count of conviction but relevant conduct as well.  See U.S.S.G. § 1B1.3.

The Government also moves for a three level downward departure for the defendant's timely acceptance of responsibility.   U.S.S.G. § 3E1.1.  Though he pleaded guilty within one month of the scheduled start of trial, defendant Delmastro saved the Government, through undersigned counsel, substantial time and expense in preparing for trial.  Undersigned counsel was substituted in as lead counsel one month before trial.  Immediately thereafter, the Government invited Delmastro to plead guilty pursuant to the terms outlined in the agreement filed with the Court.  The Government gave Delmastro a very short time frame within which to respond.  Delmastro accepted the proposal within 24 hours and, thus, saved the Government the expense of preparing for trial.

---

[1]    Defendant Delmastro incorrectly asserts in his sentencing memorandum that the bulk of the Government's criminal computations derive from unreported receipts stemming from the Civic Pub.  Def. Mem. At 2.  In fact, the vast bulk of the criminal computation for defendant Delmastro is based upon unreported receipts from the bar he owned himself – the Bar With No Name.

With this adjustment, the total offense level pursuant to the Sentencing Guidelines is 13, see PSR 21, which results in a sentencing range of between 12 and 18 months of imprisonment.

The Sentencing Guidelines reflect the consensus that those convicted of economic crimes should not be able to avoid incarceration, even where such crimes constitute a defendant's first offense.  The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the Act's goals was to rectify a serious problem in the criminal justice system:  "some major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses." See  U.S.C.C.A.N., 98th Cong., 2nd Sess. (1984) at 3260.  As Justice Breyer, previously an original member of the Sentencing Commission, explained:

> The Commission found in its date significant discrepancies between pre-Guideline punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft.  The Commission's statistics indicated that where white-collar fraud was involved, courts grant probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation.  To mitigate these discrepancies, the Commission decided to require short but certain terms of confinement for many white collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

See Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 Hofstra L. Rev. 1, 20 (1988).  This approach provides just punishment for the considerable harm that white collar crimes cause society.

In the Government's view, the advisory Sentencing Guidelines range reflects the seriousness of the offense, promotes respect for law, and provides for just punishment in this case.  The Government's recommendation of a within-guideline sentence is based, in part, on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the

Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role:  It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" Id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated:  "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

### (2)    Nature and Circumstances of the Offense

Section 3553(a)(1) instructs the Court to consider the nature and circumstances of the offense.  The facts establishing the offense are set forth above and in the PSR.  In sum, defendant took advantage of the fact that he earned a substantial part of his receipts – from two bars – in cash, and sought to conceal his cash income from the IRS in order to avoid paying his taxes.  In this country, everyone is responsible for paying his or her fair share of taxes.  The government depends on it.  Indeed, as Justice Oliver Wendell Holmes famously once stated, "[t]axes are what we pay for a civilized society . . . ." Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927) (Holmes, dissenting).  While tax fraud is not violent in nature, at its heart, it is theft, specifically theft of money to which the public is entitled.  The

-6-

victims are the millions of honest tax payers who work every day to make ends meet, abide by the rules, and pay the fair share the law requires them to.   Thus, the crime for which defendant Delmastro was convicted is a serious offense.

Defendant attempts to minimize his role in the offense by claiming that, with respect to the Civic Pub, defendant Pinone handled the financial affairs of this operation (including a state audit) and that Pinone's relatives handled the bookkeeping.  Def. Mem. at 2.  However, witnesses state that Delmastro, as partner in the business, knew of the unreported cash receipts, and further knew that he was the beneficiary of this unreported cash.  Defendant was clearly as culpable as defendant Pinone with respect to the underreporting of Civic Pub receipts.

For example, one manager at the Civic Pub states that it was Delmastro that was in charge of the day to day business of the bar, instructed that employees be paid in cash off the books, and requested that unreported and undeposited cash be delivered to him in bank bags placed in his home mailbox – sometimes at 3 a.m.  He also states that defendant Delmastro's mother was to receive the "daily sheets" and handled the bookkeeping of the business, primarily in 2004.  Another manager of the Civic Pub confirms that Delmastro, as joint owner of the business with Pinone, received bags of cash, and directed how employees were to be paid.

Finally, defendant Delmastro's contention fails to recognize that he, unlike Pinone, failed to report income from two bars rather than just one.  Indeed, the manager at the bar Delmastro owned and operated on his own, the Bar With No Name, has provided statements demonstrating that he was doing the same thing there as he was at the Civic Pub – skimming receipts, paying employees in cash off the books, and taking cash home that was not deposited in the business's bank account.

Accordingly, defendant's suggestion that he was less culpable than Pinone has it backwards. He was central to the commission of the tax fraud perpetrated at the Civic Pub and the Bar With No Name.

### (3)    History and Characteristics of the Defendant

As the PSR notes, defendant was raised in a middle class family by two loving parents who had a "story book" marriage. He was raised in a religious household, and got along with his siblings well. Delmastro attended private school growing up. In short, defendant knew better than to break the law, and there is nothing in his background that would necessitate a variance from the applicable guideline calculation.

Defendant makes a number of points for a variance relating to his history and characteristics. First, he suggests financial hardship – stemming from the purported declining business prospects of his bars, as well as from a divorce. Def. Mem. 3-5. However, the evidence demonstrates that both bars took substantial receipts and were profitable – and, thus, there was no justification for not paying the required income tax.[2]

Second, defendant suggests his current family circumstances warrant a variance because his new-born daughter needs her father around. Def. Mem. 5. Nevertheless, defendant concedes his daughter lives with her mother, and there is nothing in these circumstances that would warrant a variance. If defendant's point were valid, every father would be entitled to a variance simply because they had children to care for. This would lead to unwarranted sentencing

---

[2]    Moreover, the Bar With No Name did not close until the second half of 2005. During 2003, the year pertaining to the count of conviction, the evidence is that the Bar With No Name earned substantial receipts and profits, a portion of which defendant took in cash which he did not report on his tax return. In fact, even defendant's tax return that he did file for 2003 (for which he omitted additional receipts and profits) shows a healthy profitable business.

disparities.

Third, defendant asserts that he has obtained employment at a new restaurant. The fact that he has new employment is no basis for a variance. That these new employers know of his current situation, and are still prepared to hire him, is probative evidence that the defendant will be able to find the same or similar employment after he serves his sentence.

### (4)    Deterrence

As the Sentencing Commission states:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. § 2T1.1 (introductory comment).

The tax system is driven by the honesty of those citizens and businesses who pay their fair share, many of whom retain professionals to help them complete and file honest and accurate returns. Unfortunately, some citizens opt to take a different path, knowingly cheating their fellow citizens by failing to report all income. When a tax cheat is caught, the message must be sent that such conduct cannot be excused. Otherwise, citizens and businesses "on the fence" will be emboldened to proceed in a similarly dishonest fashion, hoping not to get caught but never fearing the consequences in the event they are discovered.

The Sentencing Guidelines call for imprisonment in tax cases because such sentences deter people like defendants who commit white-collar crimes and flaunt the federal tax system. In this case, deterrence would be achieved by a sentence consistent with the Sentencing

Guidelines.

### (5)    Need to Provide Educational or Vocational Training

The need to provide defendants with any educational or vocational training, medical care, or other correctional treatment is not a factor in this case.

### (6)    Avoiding Unwarranted Sentencing Disparities

Imposing a sentence within the advisory Guideline range would help ensure against an unwarranted sentencing disparity in this case.

### <u>CONCLUSION</u>

For all of these reasons, a sentence within the advisory Guideline range is a fair, just and reasonable disposition to this matter.  Such a resolution will not be greater than necessary and will reflect the serious nature of the offense of conviction, promote respect for the law and afford adequate deterrence to others who may be similarly situated and tempted to act as this defendant did.

Respectfully submitted,

DAVID B. FEIN
United States Attorney

By:    */S/ JOHN N. KANE, JR.*
JOHN N. KANE, JR.
(Fed Bar No.:PHV04232)
ANDREW YOUNG
(Fed Bar No.: PHV04170)
Trial Attorneys
U.S. Department of Justice
Tax Division
601 D Street, N.W.
Washington, D.C. 20530
(202) 353-9716
john.n.kane@usdoj.gov

Date:   December 10, 2010

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Connecticut by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/   John N. Kane, Jr.
John N. Kane, Jr.
Trial Attorney
U.S. Department of Justice, Tax Division